May it please the Court, Darlene Bagley on behalf of Appellant Amando Clavano. I'd like to reserve two minutes for rebuttal, if I may. Your Honor, this is a case of justice coerced and justice denied. When the trial court, through its conduct and actions, coerced jurors into relinquishing their views in favor of reaching a unanimous decision, it violated Mr. Clavano's constitutional rights to due process of law and impartial jury. When the trial court admitted the co-defendant's testimonial statement against Mr. Clavano, it violated his constitutional rights to confrontation. Even applying the AEDPA standard as we must with regard to the jury coercion issue, and the Brecht standard as we must with regard to the Crawford violation, fundamental fairness requires that this Court reverse the district court findings and grant this writ. In looking at the AEDPA standard, this Court may grant habeas relief if it finds that the last reason state court decision was an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The standard, as it may, is set forth originally in Jenkins and then applied in Lowenfield. We are to view the state court's conduct in its, or the trial court's conduct in its context and under all the circumstances. Brasfield is another Supreme Court case which is instructive, not necessarily binding, but instructive since it was held pursuant to the Supreme Court's supervisory power. And Brasfield is instructive in the sense that it dealt with the exact situation as we have here with the trial court. The trial court impermissibly inquired not only what the jury's numerical split was when it came back that it was deadlocked, but asked how they were split, conviction versus acquittal. And in Brasfield, the Supreme Court held that that was reversible error per se. Lowenfield had a different situation in that the Lowenfield court didn't have a trial judge asking how the jury was split, conviction versus acquittal. It was just if further deliberations would be fruitful. In looking at how this circuit has interpreted Lowenfield and Brasfield, there is a jury instruction that is on point, 7.7. Kagan. What do we do, counsel, with the fact that as for the co-defendant Oliver Clavino's case, that exact same issue was raised on appeal, and another panel has already indicated that that was not error? Your Honor, I don't believe that the law of the case doctrine would apply here. In Oliver Clavino's case, you know, this is a different petitioner who is not similarly situated. In Oliver Clavino's case, if you look at what this court relied upon, or a different panel, I should say, this court relied upon, it relied upon facts as they were argued by the Attorney General and as had been previously set forth in the State appellate court's decision. And the facts as set forth in the decision and as argued by the Attorney General were inaccurate and, in one instance, actually incorrect. As set forth in the Mem Dispo, I believe there were four different facts set forth. One of which was that a review of the record demonstrated that two jurors gave equivocal answers when polled by the court as to whether fundamental or as to whether further discussions would be fruitful. If you look at the record, there were no equivocal jurors. The court, the jurors came in, and the four men said, we're deadlocked. And the court asked, and did a collective poll, would further deliberations be fruitful. Collectively, the entire panel said no. Juror one, who's one of the jurors identified as being equivocal, had said that instructions may help, but in the collective poll, and then subsequently in an individual poll, said no additional time. He was very unequivocal. Juror two, likewise, was unequivocal that further deliberations would not help in the collective poll. Do you want us to write an opinion that says the prior panel got it all wrong and that the facts are all different and, therefore, this case has to come out differently? Is that what you're asking us to do? What I'm asking this Court to do is to do is to look at the facts as set forth in the record. The previous panel relied upon facts. But what are we going to do? Two defendants appear. Same juror. Colloquy between the trial judge and the jurors. Same factual situation. A panel has taken a look at that and said that the State court's determination was not erroneous, viewing it through the AEDPA standard of review, which is very deferential, as you know. What do we do with that? And so you're saying one thing is, well, the prior panel didn't get the facts right. Is that what you're saying? What I'm saying is that the facts as argued to the prior panel were pretty much recitation of facts as set forth in the State appellate court's decision, which were inaccurate. And so the fact that this panel – it's understandable that the prior panel relied upon those facts. That was what was in the State court decision, and that was what the AG argued. But reviewing the record – So was his lawyer incompetent? Are we going to say he's entitled to habeas relief now? It's a difficult situation, I understand, because Oliver Clavado's – his argument has already come and gone. Amando Clavado, one of the key differences – one of the facts that the previous panel held as determinative was that since counsel didn't object, didn't have a contemporaneous objection at the time, it couldn't have been that bad. It was under the Loewen field. In Amando Clavado's case, distinguishable from Oliver Clavado's case, Amando Clavado didn't have counsel to object when the trial court came back and did – took these actions and coerced the jury. And so understanding it's a tricky situation. Okay. Let me ask you this about coercion, because the inquiry is coercion. Brasfield was a Federal case. Yes. And we decided it under a supervisory power. And I would think that under Brasfield, if what happened here had happened in Federal court, that this Court might very well reverse. But we're in habeas. This is the State court. And this is an odd situation, because the jury, although it had been supposedly deliberating for some number of hours, it was all, as they kept saying, it was all chopped up. The jury – and this is what the district court said. This is what the State court said. The jury had come in, then had deliberated some, then had been out for, what, six or seven days, and then had to come back. So that they really, in essence, they hadn't deliberated at all. And the Court said, you know, go back. And I'm just wondering how we are to presume that this was – that we are supposed to say that this was coercive in violation of Supreme Court law. Well, I think if we – so they had deliberated the first day for six hours. And that included the readback of testimony for three different witnesses. And then they came back the next day, and they deliberated for approximately four and a half hours. Also had readback of one witness. And then there was a passage of, I believe it was five days, five or six. And then they came back and they had deliberated. Six days in between. That's a long time. Six-day recess. It is. But I think it's important for this Court to note that when the jury came back deadlocked, the foreman stated that they had been deadlocked since day one. It wasn't as if this was – that they had gone back and forth. They were deadlocked from day one. Now, that means they really hadn't deliberated much at all. It was – well, I think it was telling of the sort of case that it was. I mean, the prosecution's case relied primarily on a witness who, at first, had said he was so high on PCP he had no recollection of any events. And then all of a sudden had a recollection of events. And two other witnesses whose testimony all kind of contradicted itself. So I think that's telling in terms of why they'd been split from day one. So understanding that their deliberations hadn't been the smoothest because they had had two consecutive days and then a break of six and then they came back, this was a jury that had deliberated for 13 and a half hours and had had four witnesses' testimony read back to them. And when they came back, the judge asked collectively, would more time help? And collectively, they said no. And then the judge pulled each individual juror who said no. And it wasn't until the judge – and this is after the court had asked what their numerical split was. In the Ninth Circuit, there's a case – I believe it's – I can't – I don't know how to pronounce it correctly. Adjuboy, which is cited in the comments to Instruction 7.7, that says, if after asking how a jury is split for conviction versus acquittal, an Allen charge is given, it is per se reversible error. And I think that's compounded by the fact that the trial court didn't give a countervailing instruction to say, don't give up your, you know, your beliefs. Well, he didn't give an Allen charge. He didn't give an Allen charge. He gave what essentially was an Allen charge, saying, I understand – you know, take it in the context. We now know what the numerical split is. We now know how many are for guilt and how many are for acquittal. And there have been two polls, and he actually asked a third time, are you sure more time wouldn't help? And then said, go back and try again. That's essentially an Allen charge, and he didn't give any countervailing instruction saying, don't give up, you minority jurors – because I know there are four of you now – don't give up those beliefs that you've obviously held for the past, just in exchange of reaching a unanimous verdict. And they came back in less than an hour with a unanimous verdict. Did he give that instruction, don't give up your beliefs? He did not. Well, I thought you said he did. No, no. I'm sorry. Perhaps I misspoke. That was what was – that's what's so important. And I think if we could go back and look at it, I think that's what's so important.  He didn't give the curative instruction as to – it's Jimenez v. Myers that says failure to – Well, the word Allen wasn't even used, was it? The word Allen? Allen, yes. Correct. It wasn't even referred to. He just brought them back and – He told them to go back and try again. Go back. Look at the instructions and the evidence. And the jurors were practically telling them that, you know, we've been trying to pull this together. We've re-listened, had the testimony re-read. And it's been like this from the beginning. And then a couple of them kind of got a little equivocal. And then he sent them back. And there was some tension going on because if they were sort of telling them, I want you to get this thing done. That is a sentence. And you're not supposed to ask the jury – well, you shouldn't ask them how they stand numerically. And if you do that, you shouldn't ask them how are they split, guilty or not guilty. Then you get the four people who were there. And they sense the judge's displeasure that they haven't cleaned this thing up one way or another. And two of them sound a little equivocal. And they go back. And it didn't take them long to come back with a verdict. So. And in fact, the two statements after the judge had pulled twice wasn't even necessarily equivocal. One juror specifically just said eight of us could reach a verdict, which is very clear that it's the eight guilty, eight who are in favor of guilty. And. Well, he said it wouldn't take us long. Yeah. Do you want to touch on your other point, the hearsay point in this case? I'm sorry? Do you want to talk about the other issue? The Crawford issue? Yeah. Certainly, in 42 seconds. Applying the Brecht standard, which I believe is the appropriate standard to apply, and I realize it's up actually in front of the Supreme Court right now, whether it's AEDPA or the Brecht standard to apply on constitutional error. But I think reviewing the record as a whole, the allowing the co-defendant Oliver's statement to be admitted against Amando Clavano had a substantial and injurious effect on the outcome of the trial. What was the, what does the record show? Was there an objection? There was an objection. It was pretrial. And it was, I guess, meted out that it would just be a standing objection to allow Oliver Clavano's statement in against Amando Clavano. And it came in through Detective Loveless, I believe. And Oliver's statement, the crux of it was, you know, confirming that they knew the named victim, confirming that the named victim had borrowed the car, and then a statement by Oliver, which was argued by the prosecution in closing, that he knew that he was very stereo, and that he was going to inflict injury on him and send him to the hospital. Oliver did deny being involved in the homicide. However, the prosecution argued that very statement to the jury in closing for premeditation, for planning, for motive. And so it certainly, you know, had a substantial injurious effect on the outcome. Had there been a motion to sever? I don't believe there was a motion to sever. It appeared throughout the whole trial that the two counsel kind of ---- How did these appeals get severed? I believe Amando's, Clavano's petition, the reason we're coming, I believe it's two and a half years after Oliver Clavano, is there was the third issue here is a Cunningham issue that hadn't been exhausted in the state court. And so it was sent back to the state court to exhaust the Cunningham issue. In fact, counsel wasn't appointed for Amando Clavano until, I believe it was the very day that oral argument happened in Oliver Clavano's case. So that's why it got a different ---- You know, I was on that panel. Yes. I was on that panel, and, of course, you know, we have a kind of a limited exposure to these. And I can't remember whether we were aware that the ---- that Oliver's case was a case that was out there somewhere. I've listened to the recording of that argument, and it doesn't ---- there was no reference made to there being another co-defendant who had ---- who wasn't there able to argue and have his voice heard that day as well. I'm not ---- It was as if, I don't know, it's ---- if I look back at my file on that, which this was back May of 2012, I even have a diagram of all the recesses, and, you know, I don't have the ---- all the rest of it. But I ---- and that case involved ---- that case involved Oliver, right? Yes. And no mention was made of Mondo. Of Mondo. And certainly if they had been arguing together. Not Armando. It's Armando. Yeah. We wouldn't have the concerns of two different outcomes affecting two different defendants differently. If they had been together. One of those things. I guess in sum, I would just ask, with fundamental fairness in mind, that this Court reverse the district court's finding and grant this writ. Are there no further questions? Thank you. All right. May it please the Court, Vincent Lafietta, Deputy Attorney General, on behalf of the Respondent, district court properly denied relief. Clevano's claim of jury coercion is procedurally barred in this case. California's contemporaneous objection rule is both adequate and independent State law ground. What did you just say? California's contemporaneous objection, Your Honor, rule is a State law independent and adequate ground for denying relief, which the district court properly found procedurally barred there. Even though his lawyer wasn't there? Your Honor, he verbally agreed to be jointly represented by his brother's attorney for the purposes of the jury note. He's on record as saying that. Contrary to counsel's argument, there was no conflict, apparent or otherwise. The jury note indicated that they were stuck as to both defendants. There's no reason that one brother would benefit as to the other brother. So, having been represented by counsel and not objecting, the district court correctly determined that this was procedurally barred. Even if it were to address the merits of this case, Mr. Clevano would still not be entitled to relief because the state court reasonably determined that the complaint of remarks were not coercive. The trial court merely asked the jury to continue deliberating. It did not ask any members of the jury to reconsider their opinion or instruct them that a decision was required, just the opposite. It asked them to continue deliberating and to allow in a little bit to see where we stand, indicating that perhaps a different outcome would be available shortly. As noted, also, a separate panel of this court. But wouldn't the people in the minority feel some pressure then to switch their votes? Well, Your Honor. Because they've already disclosed now to the judge that they didn't think the state had sustained its burden of proof. The, I believe the state courts and the federal courts both agree that it is not best practice to poll the jury as to for and against guilt. However, in this case, and the reason for that is prophylactic in nature, because it could very easily be coercive, particularly if the split is 11-1 or something like that. In this case, it was an 8-4 split, and absent any other coercion or trial court that it would like movement in one direction or the other, the polling of the jury in and of itself is not a federal constitutional error. And without more is not sufficient to grant relief in this case. As noted, a separate panel in this court correctly determined that the colloquy was not under ADPA warranted reversal or granting of the rent. With respect to the alleged Crawford error, the state court correctly determined that the brother's statement was improperly denied, it was Crawford error. However, they determined that it was harmless under Chapman. As petitioner notes, the issue of deference to Chapman, to a state court's Chapman analysis, is currently pending under IOLA. Under Merileo, in the Ninth Circuit case, the court would directly apply Brax. Even under that standard, petitioner is not entitled to relief, as petitioner noted that the brother's statement largely established a motive for the shooting, that is that the brothers were upset at Mr. Townsend for stealing the car radio. That fact had already been established by the testimony properly admitted of four different witnesses, Cardenas, Munoz, Burks, and Reyes, all discussed the stealing of the car radio, that Townsend had admitted to doing so, and that the brothers were quite upset about this. The other case involved Oliver, right? Yes, Your Honor. That's the panel I was on. Yes, Your Honor. Is it correct that there was no motion to sever, never a motion to sever? I don't believe so. There was not. And was the panel, that panel ever made aware of the fact that the other brother's case was just out there somewhere and hadn't been resolved? I do not know, Your Honor. I know Mr. Crobley from my office argued that case, and I spoke with him. He was certainly aware that there was a brother pending, but as the petitioner noted, the only issue in Oliver Clevano's case was the jury coercion allegation. And in this case, has the Crawford error and the Cunningham error alleged? And it seems as though that's why they were split up. Well, and returning to the Crawford error analysis and the harmlessness therein, the erroneously admitted statements of the brother were completely cumulative to properly admitted evidence. And additionally, Mr. Cardenas testified that he saw the brothers in the course of committing the crime, and of course, Armando Clevano here was later arrested in possession of the firearm. So what was the evidence of the other witnesses who testified as to the motive that the radio was stolen? It was Cardenas, Munoz, Burks, and Reyes, various witnesses, some testifying as to Townsend's statements that he had stolen the car radio and sold it for drugs. One witness testified that she was with the brothers as they were driving around town looking for the missing vehicle, which they found with the radio stolen, and that the brothers were upset about this. In conclusion, State court reasonably and properly determined that the erroneous admission of the testimony was harmless, and under either Brecht or future IOLA, the petition should be denied. Did Oliver object to that? Did Oliver object? To the — to the — to the — Oliver, I take it, couldn't have objected to the testimony coming in about his statement to the police officer? Yes, that's correct, Your Honor. So — so, yeah. Finally, one last note with respect to the jury coercion claim. The State court cited evidence of jury equivocation, and that was juror number one explicitly stating that he was undecided, and juror — and in the first case — and in the second case, in this case as well, did the judge get a — a waiver from a — a motto of any possible conflict of interest by having one attorney represent both of them at the same time? No, Your Honor, the — the brother's attorney, Oliver's attorney, was the one that appeared — represented that he would be — he would be representing both of the defendants, the only — Okay, but there's a — but there is sort of an inherent conflict of interest when you have co-defendants, whether they're brothers or not. Well, Your Honor, the purpose of the joint representation was only for the jury note, and the jury note indicated that they were hung as to — or they couldn't reach a decision as to both defendants. Oh, for the jury note. So then after they — they became aware of the jury note, then — then you had the hearing, right? Yes, Your Honor, where the — And — and so the — the one — so the — that limited representation was just with the note. Did that cover — did that cover the — the hearing? Well, yes, Your Honor. When I say the note, I mean reading the note and responding to the jury for that So the attorneys were called to the courtroom, made aware that there was a note and that there would be a response to the jury. And the attorney was there for that purpose. And under the facts of this case, where the jury was hung as to both brothers, there was no conflict, apparent or otherwise, at that hearing. Did — did the juror — the judge asked the defendant whether he was satisfied  Yes, Your Honor. Yeah, and he didn't ask the defendant — he didn't raise the potential conflict interest. That's correct, Your Honor. He didn't do that. He did not discuss conflicts. Shouldn't he have done that? No, Your Honor. Under the facts of this case, there was no apparent conflict. There was no conflict. Well, there doesn't have to be an apparent conflict. There's an inherent conflict. There's no inherent conflict in responding to the jury's note regarding being deadlocked as to both brothers. It would be hard for an attorney to spin that in one client's favor as opposed to the other. There's never been any suggestion that his lawyer were there, he would have That's correct. said something because his client's interest was different, I guess. In conclusion, with respect to the jury coercion note, I would note that the prior panel on this case discussing Oliver's case did indicate in its order denying relief that perhaps the outcome would be different if it was a federal appeal, but under ADPA, this was a reasonable determination. Unless there are any questions. Well, there's a lot of reasons why different panels can bring on different results. Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. Your Honor, Mr. Clevano did not have counsel present with him when the jury came back deadlocked and the judge coerced the jury into returning a verdict. Likewise, Mr. Armando Clevano did not have counsel back in May of 2012 when another panel of this court heard oral argument for the first time on this jury coercion issue. We should not close the courthouse doors to Mr. Armando Clevano because he has twice been denied counsel at key opportunities where he has voicing it to be heard. Well, he agreed to it, didn't he? Your Honor, he was not properly advised of his right to conflict-free counsel. It's very clear it was a – it was literally a two-sentence exchange. The other attorney stood forward and said, it's fine if I'm here, and the judge said, is that so? Well, that's pretty common practice in state court, though, where lawyers would stand in for proceedings like that. They're appearing all over the county. Is there – what is the conflict? The conflict is Mr. Armando Clevano is entitled to have an attorney who is acting on his behalf. The very fact that we are standing here arguing whether or not there was jury coercion from this instance where he didn't have counsel representing him shows that it was a pivotal point in this trial. And his attorney wasn't there to object to this judge's coercive behavior. But Oliver and Armando's interests were perfectly aligned at that point, wasn't it? It's – I think it's – The jury was deadlocked as to both brothers. They were. But I think it's a different situation to say that their interests were aligned and the fact that he's still entitled to conflict-free counsel. I don't think that that gets over the fact that he was not advised of his right to conflict-free counsel, nor did he waive it. It has to be a knowing, intelligent, and voluntary waiver of conflict-free counsel. And there was no such thing. And his counsel was not present to object at the very pivotal point of the trial that we are now here before this Court seeking habeas relief based on fundamental fairness and due process of law. The very fact that he didn't have counsel there, just like he didn't have counsel in May of 2012 when this – another panel first heard this argument, it would just be – it would just be unfair to close the courthouse doors to him. Who owned the weapon? Who owned the weapon? Yeah. Whose weapon? That is a good question. When the two brothers were arrested, it was found on Armando Clavano when he was arrested. I don't know if he owned it. He was in possession of it at the arrest. Who was the shooter again? The alleged – the shooter was Oliver. Oliver. Yes. That's what the allegations. Not Armando. Correct. Correct. And was – Your Honor, just to Was there – there was a finding, wasn't there, as to who the shooter was? The facts is argued to the – to the jury were that Oliver was the shooter. That's – that has been the government's argument. Correct. Yeah. Correct. It has never been alleged that Armando was the shooter. Armando had never been arrested. I'm sorry? You said Armando had never been arrested before? No, there were no allegations that he were – that he was the shooter. The testimony of the other witnesses is that he was back at the apartments when the shooting occurred. Well, wasn't one of them outside while the other one went in to do the shooting? According to Mr. Cardenas' testimony, the brothers were both by a fence that kind of lined the street. Yeah, yeah. And Oliver is alleged to have jumped the fence and gone out of sight to where – well, allegedly to where the other apartment where the shooting took place. And Armando stayed back with Mr. Cardenas according to Mr. Cardenas' testimony. And then Oliver – the shots were heard and Armando – Well, one came down. The one went in to case the place. So, yeah, according to Mr. Cardenas, Oliver jumped the fence, went to check out the – Yeah. I think it was Spruce Street Apartments, came back – He could see people in the window, through the window. Correct. But that was not visible from where Armando and Lucas Cardenas remained. And then Oliver purportedly returned. Armando then alleged to have given him something covered by a bandana. Well, he – And then Oliver left again. And then the shots were fired. Armando takes off for an apartment, as does Cardenas. They both kind of leave. And that's where that version of events – And Armando then had the gun. According to Mr. Cardenas, Armando passed the gun to Oliver. I think it was under the fence or something. And then Oliver took off. To the fence? Before – No, wait. Are you saying before the shooting or after the shooting? Well, Oliver pops the fence, goes out of sight to purportedly case the joint, comes back. Armando then purportedly hands him the gun. And then Oliver leaves a second time. And then the shots are fired. And at the time of arrest – Correct. Armando has the gun. Armando is in possession of the gun. Yeah. Or of a gun. A gun, right. Right. It wasn't conclusively determined. The witness couldn't conclusively determine. Okay. Okay. Fine. Thank you. Thank you. All right. Let's take care of our calendar and see you next time around.
judges: Schroeder, Pregerson, Nguyen